**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNETTE R.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[2] <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:19-cv-00797-MAA <br><br> **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On April 29, 2019, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision denying her application (1) for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act; and (2) Supplemental Security Income benefits pursuant to Title XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

reasons discussed below, the Commissioner's final decision is reversed, and this action is remanded for further administrative proceedings.

## PROCEDURAL HISTORY

On March 23, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits. (Administrative Record ("AR") 225-28.) Plaintiff filed an application for Supplemental Security Income benefits on the same date. (AR 229-34.) In both applications, Plaintiff alleged disability beginning on November 30, 2012. (AR 225, 229.) Plaintiff alleged disability because of morbid obesity, back injury, depression, arthritis, scoliosis, fibromyalgia, sleep apnea, Hashimoto's disease, heart disease, and high cholesterol. (AR 264.)

Plaintiff's applications were denied initially and on reconsideration. (AR 111-12, 156-62.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 163-65.) At a hearing held on April 3, 2018, at which Plaintiff appeared with counsel, ALJ Paul Isherwood heard testimony from Plaintiff. (AR 34-74.)

In a decision issued on April 26, 2018, the ALJ denied Plaintiff's application. (AR 7-27.) The ALJ made the following findings pursuant to the Commissioner's five-step evaluation: first, Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (AR 12.) Second, she had the following severe impairments: asthma; obesity; back pain/joint disorder; and sleep apnea. (AR 13-15.) Third, she did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 15.) Fourth, Plaintiff had a residual functional capacity ("RFC") to perform light work with the following limitations: lifting or carrying no more than 20 pounds occasionally and 10 pounds frequently; and standing or walking for six hours in an eight-hour workday. Further, while

Plaintiff was able to climb ramps and stairs frequently, Plaintiff could never climb ladders, ropes, or scaffolds, and she could never kneel, crouch, or crawl. (AR 15-21.) Fifth, Plaintiff could perform her past relevant work as a bookkeeper, clerical assistant, social worker, and schoolteacher. (AR 21.) Thus, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (*Id*.)

On March 22, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Thus, ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUES

The parties raise the following disputed issues:

1. Whether the ALJ properly considered the relevant medical evidence of record in assessing Plaintiff's RFC; and

2. Whether the ALJ properly considered Plaintiff's subjective statements of record and testimony under oath regarding her impairments, symptoms, and limitations in assessing plaintiff's RFC.

(Joint Stipulation ("JS") 4.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a

whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

For the reasons discussed below, reversal and remand for further administrative proceedings are warranted for Issue One. Thus, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand"); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand").

**I.     Residual Functional Capacity.**

    **A.     Legal Standards.**

        **(1) Assessing severity of impairments at step two.**

At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996); *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. §§ 404.1522(b), 416.922(b).

"Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citing, *inter alia*, 42 U.S.C. § 423(d)(2)(B)). In addition, the ALJ must consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28 (S.S.A. 1985), 1985 WL 56856 at *3; *see Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). A nonseverity determination "requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p (S.S.A. July 2, 1996), 1996 WL 374181 at *2.

### (2) Assessing RFC at step three.

A claimant's RFC is the most the claimant can do in a work setting despite the physical and mental limitations caused by the claimant's impairments and related symptoms, such as pain. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ's RFC finding "must be based on all of the relevant evidence in the case record," including, *inter alia*, medical signs and laboratory findings; medical source statements; and effects of symptoms, including pain, that are reasonably attributable to a medically determinable impairment. SSR 96-8p, (S.S.A. July 2, 1996), 1996 WL 374184 at *5. The ALJ must consider all record-supported limitations imposed

by the claimant's medically determinable impairments, even those impairments that are not severe. *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1164-65 (9th Cir. 2008); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); SSR 96-8p, 1996 WL 374184 at *5.

**B.     Background.**

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p (S.S.A. July 25, 2012), 2012 WL 3104869 at *2. The Commissioner "will" find that a person has a medically determinable impairment of fibromyalgia if (1) his or her treating physician diagnosed fibromyalgia and provides certain supporting evidence; and (2) the physician's diagnosis "is not inconsistent with the other evidence in the person's case record." *Id.* at *2. Very briefly stated, the evidence necessary to support a fibromyalgia diagnosis is (1) a history of widespread pain, at least 11 "tender points" on physical examination, and evidence that other possible diagnoses were excluded; *or* (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, and evidence that other possible diagnoses were excluded. *Id.* at 2-3. As well, the evidence must document that the physician reviewed the person's medical history and conducted a physical exam. *Id.*

Plaintiff's treatment records reflect that she had a fibromyalgia diagnosis. On April 15, 2015, Plaintiff sought treatment from Rajeev Yelamanchi, M.D., for sleep apnea. (AR 550-53.) As relevant, Plaintiff complained of fatigue, joint pain, muscle weakness, constipation, chronic back pain, and daytime sleepiness. (AR 552, 556-57.) Dr. Yelamanchi took note of plaintiff's medical history and

///

///

///

conducted a physical examination.[3] (AR 553.) Dr. Yelamanchi listed fibromyalgia among Plaintiff's diagnoses. (AR 550.)

Dr. Yelamanchi included fibromyalgia among Plaintiff's diagnoses in treatment notes dated May 20, 2015, June 3, 2015 and August 18, 2015. (AR 560, 563, 572.) On a November 18, 2015 visit, Dr. Yelamanchi referred to a diagnosis of chronic pain syndrome rather than fibromyalgia. (AR 567.) Dr. Yelamanchi emphasized to Plaintiff that adequate control of her chronic pain was necessary, as chronic pain can disturb sleep. (*Id.*) The orthopedic consultative examiner took note of plaintiff's fibromyalgia and asserted that she was diagnosed with the impairment "about five or six years ago" by physicians at Kaiser Permanente in Victorville.[4] (AR 585.)

### C. Analysis

Plaintiff contends that the ALJ erred by (1) failing to determine the severity of her fibromyalgia/chronic pain syndrome (hereinafter, Plaintiff's "fibromyalgia") at step two; and (2) failing to properly consider the medical evidence of her fibromyalgia in assessing her RFC at step 4. (JS 4.) The Court agrees. As Plaintiff asserts, the ALJ found that her asthma, obesity, back pain/joint disorder, and sleep apnea were severe impairments, whereas her hypothyroidism, hypertension, and depression were nonsevere. (AR 13-14.) The ALJ did not discuss, or even mention, Plaintiff's fibromyalgia, singly or in combination with her other

---

[3] The record does not indicate whether Dr. Yelamanchi palpated Plaintiff's possible tender points. (*See* AR 553.)

[4] The record does not include treatment notes from the referenced Kaiser Permanente visit(s), which evidently predated Plaintiff's disability onset date. (*See generally* AR.) At the hearing, Plaintiff testified that a "Beverly Richau from the Public Health Department" had conducted tender point testing approximately 18 months previously. (AR 50.) The record does not appear to include any treatment notes from that visit either. (*See generally* AR.) The Court notes that if the ALJ believed that the medical evidence was insufficient to properly evaluate Plaintiff's fibromyalgia, it behooved him to develop the record. *See* **Error! Main Document Only.***Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

impairments. (*See id.*) As there was substantial evidence that Plaintiff had a medically determinable impairment of fibromyalgia, the ALJ's failure to address it at step two was error. *See Smolen*, 80 F.3d at 1290; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must explain why "significant probative evidence has been rejected").

An ALJ's failure to designate an impairment as severe at step two may be harmless if the ALJ nonetheless incorporates the functional limitations from that impairment in the remaining steps of the five-step evaluation. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding that any failure to list bursitis as severe at step two was harmless error where ALJ considered any functional limitations imposed by bursitis at step four); *Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005) (concluding that any failure to list obesity as severe at step two was harmless error where ALJ considered any functional limitations imposed by obesity at steps three and five and in RFC determination). As well, an error is generally harmless where it is "inconsequential to the ultimate nondisability determination." *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the error was not harmless, because the ALJ neither incorporated Plaintiff's claimed fibromyalgia limitations at step four nor provided sufficient reasons for failing to do so.

At step four, the ALJ acknowledged that Plaintiff alleged fibromyalgia as a basis for her claimed disability. (AR 16.) He noted that, at the hearing, Plaintiff testified that she had "received testing for fibromyalgia" and that she had pain her hands, neck, head, feet, legs, and whole body due to the impairment. (AR 17.) The ALJ noted, as well, that Plaintiff reported being in "constant pain" from the fibromyalgia. (AR 16.) However, the ALJ did not otherwise address Plaintiff's fibromyalgia. (*See* AR 16-21.) Rather, he addressed, and purported to reject, Plaintiff's claims of limited daily functioning. As well, he specifically rejected her claimed subjective symptoms regarding her other impairments. (*See* AR 18-20.)

Finally, he asserted as a general proposition that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record." (AR 18.)

The ALJ did not properly find Plaintiff incredible as to her fibromyalgia symptoms. Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause alleged subjective symptoms, the ALJ may reject a claimant's allegations upon: (1) finding evidence of malingering; or (2) providing clear and convincing reasons, supported by substantial record evidence, for so doing. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ's determination must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ." *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted).

Here, the ALJ's boilerplate statement regarding Plaintiff's subjective claims does not meet the required level of specificity for discounting her subjective symptoms. And his grounds for rejecting Plaintiff's report of constant fibromyalgia pain are not entirely clear. The ALJ merely recited Plaintiff's self-reported activities and limitations, without stating how such matters undermined her claims of debilitating pain. (AR 16-17.) To the extent the ALJ meant that Plaintiff's activities, such as going outside once or twice a week, were inconsistent with her claimed pain, the Court is not convinced. An ALJ may discredit a claimant's allegations by pointing to evidence that she is able to engage in activities that would translate to a workplace setting, upon making specific findings relating to those activities. *Burch*, 400 F.3d at 680-81. However, the relevant question is whether the physical activities at issue consume a "substantial part" of the claimant's day, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), as "many home activities are not easily transferrable to what may be the more grueling environment of the

9

workplace, where it may be impossible to periodically rest or take medication," *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff did not report or testify that she spent a substantial part of the day in the activities at issue. (*See* AR 36-74, 289-309.) Therefore, her self-reported functioning did not undermine her claims of pain that prevented her from working.

The Ninth Circuit has held that where an ALJ properly rejects a claimant's testimony using "ordinary techniques of credibility evaluation" (*Bunnell*, 947 F.2d at 346), and provides record-supported, clear and convincing reasons for finding the claimant incredible, the finding that the claimant generally lacks credibility may be a permissible basis for rejecting a claimant's testimony as to specific symptoms, especially where no objective medical evidence supports the claimant's claims of severity. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) ("*Thomas*"); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), *as amended on reh'g* (Sept. 17, 1997).[5] In *Thomas*, for example, the ALJ found that the claimant was generally not credible because she showed "little propensity to work in her lifetime," was not a "reliable historian," failed to give maximum effort in physical capacity evaluations, and "seemed to engage in considerable histrionic exaggeration at the hearing." *Thomas*, 278 F.3d at 958-960. Given this general credibility finding, the Ninth Circuit concluded that the ALJ did not err in excluding the plaintiff's claimed medication side effects, which entirely lacked objective medical support. *Thomas*, 278 F.3d at 958-960.

///

---

[5] The Ninth Circuit has not overruled the foregoing precedent. That said, its continuing viability is perhaps questionable in light of SSR 16-3p (S.S.A. Mar. 16, 2016), 2016 WL 1119029, which eliminated the term "credibility" from the Administration's sub-regulatory policy. *See Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017) (SSR 16-3p makes clear that assessments of individual's testimony by ALJ are "not [designed] to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness").

In the instant case, although the ALJ discussed plaintiff's other claimed impairments and subjective symptoms at length, the ALJ did not make a general credibility finding comparable to the one in *Thomas*. *Compare* AR 16-21 *to Thomas*, 278 F.3d at 958-60. The Court therefore finds that the ALJ did not properly reject Plaintiff's claims regarding her fibromyalgia symptoms. *See Light*, 119 F.3d at 793 (finding reversible error where ALJ "failed to articulate an acceptable reason either for disbelieving [the plaintiff's] testimony in general or for discrediting his pain testimony specifically"). In turn, his failure to incorporate her claimed fibromyalgia limitations in determining her RFC was error. *See Lewis*, *supra*.

Defendant contends that any error was harmless. As Defendant sees it, Plaintiff "fails to cite any evidence in the record suggesting that her fibromyalgia diagnosis requires any further limitations than those already identified by the ALJ." (JS 7.) Defendant argues, as well, that the record does not show that the impairment was severe, because there are no treatment notes showing tender points on examination or active treatment for fibromyalgia. (*Id.*) These arguments do not avail Defendant. First, neither the existence nor the severity of fibromyalgia can be discounted by the lack of significant X-ray findings or other objective findings. *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001); *see also Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004). As the Ninth Circuit has explained, fibromyalgia's symptoms are "entirely subjective." *Rollins*, 379 F.3d at 855. Second, as set forth above, a claimant may demonstrate fibromyalgia by means other than tender points on examination. Third, the ALJ did not cite a lack of treatment for fibromyalgia, or a lack of objective evidence of the impairment, as grounds for his decision. The Court cannot affirm the Commissioner's decision on grounds upon which the ALJ did not rely. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 n.2 (9th Cir. 2008).

///

In sum, the ALJ committed reversible error by failing to properly address Plaintiff's fibromyalgia at steps two and four of the sequential evaluation.

## II.     Remand for Further Administrative Proceedings.

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Here, all essential factual issues have not been resolved. Thus, it is inappropriate to credit Plaintiff's testimony as true. *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017). The record raises factual conflicts about the severity of Plaintiff's fibromyalgia and Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (stating that remand for an award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the existing record does not clearly demonstrate that the claimant is disabled within the meaning of the Social Security Act).

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. It is not the Court's intent to limit the scope of the remand.

**ORDER**

It is ordered that Judgment be entered reversing the final decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: July 13, 2020

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　MARIA A. AUDERO
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE